## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **)** |
| | **)** |
| **V.** | **)CASE NO.3:25-cr-214-RAH-CWB-3** |
| | **)** |
| **ALEXANDROS KONSTANTINO GIKAS,** | **)** |
| | **)** |
| **Defendant.** | **)** |
| | **)** |

### DEFENDANT'S MOTION TO DISMISS
### FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE

COMES NOW, Alexandros Konstantinos Gikas, by and through undersigned counsel, and respectfully moves this Honorable Court, pursuant to Federal Rule of Criminal Procedure 12(b)(2) to dismiss the Superseding Indictment for lack of personal jurisdiction and improper venue. In support of this motion, Mr. Gikas states as follows:

### INTRODUCTION

This case presents fundamental questions about the constitutional limits of federal criminal jurisdiction in the internet age. The Middle District of Alabama lacks both personal jurisdiction over Mr. Gikas and proper venue for this prosecution. These are not mere technicalities, but rather essential protections guaranteed by the Constitution to ensure that criminal defendants are tried in forums with which they have meaningful connections and where their alleged criminal conduct actually occurred.

Mr. Gikas is a lifelong resident of California who has never set foot in Alabama. He has never traveled to, conducted business in, or owned property in this state, and

has no family or personal connections to this district. All of the relevant conduct alleged in the Superseding Indictment occurred entirely within the State of California, where Mr. Gikas resided and allegedly accessed a website hosted on servers located outside the United States. Although the foreign website was accessible by users around the world (including the United States), Mr. Gikas's alleged interaction with it was conducted exclusively from his home in California.

The government's entire theory of jurisdiction and venue hinges on a single, attenuated connection: one of Mr. Gikas's co-defendants happens to reside in the Middle District of Alabama. However, the government has provided no discovery - none whatsoever - indicating that Mr. Gikas ever communicated with this co-defendant, coordinated with him, knew him, or had any awareness of his existence or location. The co-defendant's unilateral decision to reside in Alabama cannot, consistent with constitutional due process requirements, be imputed to Mr. Gikas to establish this Court's jurisdiction over him or to justify venue in this distant forum.

The government's theory is jurisdiction and venue are proper in any district where the website in question could be accessed, based on the theory that all alleged users of the same online platform are participants in a single, nationwide conspiracy. This theory would effectively eliminate venue protections in internet cases, allowing the government to prosecute defendants in any district it chooses, regardless of where the defendant lives or where his conduct occurred. Such an approach is fundamentally inconsistent with Supreme Court precedent and the constitutional guarantees of due process and venue.

For the reasons set forth below, this Court should dismiss the Superseding Indictment for lack of personal jurisdiction and improper venue, or alternatively, transfer this case to the Central District of California, where Mr. Gikas resides and where all of his alleged conduct occurred.

## FACTUAL BACKGROUND

### A. Mr. Gikas's Residence and Lack of Connection to Alabama

Alexandros Konstantinos Gikas is a resident of Irvine, California, located within the Central District of California. He has resided in California continuously since 1985, a period of forty years. Throughout his entire adult life, Mr. Gikas has maintained his home, his employment, and all of his personal and professional activities in California. He has never traveled to Alabama, has never conducted any business in Alabama, and has no family, friends, or associates residing in Alabama.

Mr. Gikas has never owned real property in Alabama, has never maintained a bank account in Alabama, has never held a driver's license in Alabama, and has never been employed by any Alabama-based entity. He has no Alabama telephone numbers, no Alabama mailing addresses, and no Alabama professional licenses or certifications. In short, Mr. Gikas has absolutely no connection of any kind to the State of Alabama, much less to the Middle District of Alabama specifically.

### B. The Alleged Conduct Occurred Entirely in California

According to the government's own allegations and the evidence allegedly seized during the search of Mr. Gikas's Irvine, California residence, all of the conduct forming the basis of the charges against him occurred in California. The government

alleges that Mr. Gikas accessed and used an online foreign forum on the Dark Web that was dedicated to illegal content. This access allegedly occurred exclusively from Mr. Gikas's residence in Irvine, California, using internet service provided by a California-based internet service provider, through an IP address registered to Mr. Gikas's California address.

The foreign website itself was not hosted in Alabama. Rather, according to the government's allegations and publicly available information, the foreign website was hosted on servers physically located in Europe. The foreign website was operating over the Tor network, which is an anonymizing internet network that routes traffic through multiple servers around the world to protect user anonymity. On information and belief, at no point did any data transmitted by Mr. Gikas from his California residence pass through servers or infrastructure located in Alabama.

The FBI executed a search warrant at Mr. Gikas's residence in Irvine, California, in April 2025. All of the digital devices seized by the FBI, and which form the basis of the instant indictment, were in California, at Mr. Gikas's home. Mr. Gikas's interview with FBI agents took place in California. The pen register and trap-and-trace device used to monitor Mr. Gikas's internet activity were placed on his residential internet access in California and were requested by federal agents and members of the U.S. Attorney's Office in the Central District of California.

In short, every single element of the alleged criminal conduct—every act that Mr. Gikas is accused of performing—took place in California. There is no allegation that Mr. Gikas ever uploaded content from Alabama, downloaded content to

Alabama, communicated with anyone in Alabama, directed any content toward Alabama users, or took any action whatsoever that had any connection to the State of Alabama.

## C. The Sole Connection to Alabama: A Co-Defendant's Residence

The Superseding Indictment names three defendants: Mr. Gikas, Jacob Parker, and Sean Edward Young. According to the indictment, Jacob Parker resides in Lee County, within the Middle District of Alabama and Sean Edward Young resides in Maryland, within the District of Maryland. The indictment charges all three defendants with conspiracy to advertise child pornography and conspiracy to distribute child pornography.

However, the government has provided no discovery, showing that Mr. Gikas communicated with Jacob Parker or Sean Edward Young. There is no evidence of emails, text messages, telephone calls, online chat messages, or any other form of communication between Mr. Gikas and either of his co-defendant. There is no evidence that Mr. Gikas was aware of their existence or had any interaction with them whatsoever prior to the return of the indictment.

The government's theory is that all three defendants allegedly used the same website, they were all participants in a single conspiracy, and therefore venue is proper in any district where any member of the conspiracy resided. However, this theory conflates the legal requirements for establishing venue with the legal requirements for proving a conspiracy. The fact that the government may ultimately

be able to prove that Mr. Gikas accessed and utilized the foreign website, it does not answer the threshold question of where venue properly lies for his prosecution.

## D. The Website's Global Accessibility

The foreign website at issue in this case was accessible to internet users throughout the United States and around the world. Any person with internet access and knowledge of the website's Tor network address could access the site from any location. The foreign website was not geographically targeted toward Alabama, nor was it designed to appeal specifically to Alabama residents. It did not feature Alabama-related content, did not advertise exclusively to Alabama users, and did not in any way single out Alabama as a target market or area of focus.

Because the foreign website operated over the Tor network, it was designed specifically to obscure the geographic location of both the servers hosting the site and the users accessing it. The Tor network routes internet traffic through multiple relays located in different countries, making it extremely difficult to determine the physical location of any user or server. This global, anonymized structure means that the website had no connection to Alabama, or for that fact with any other state or country in the world.

The government's theory that venue is proper wherever the website could be accessed would mean that Mr. Gikas could be prosecuted in any of the federal judicial districts in the United States, since the website was accessible in all of them. This cannot be the law, as it would render the constitutional venue requirement

essentially meaningless in cases involving conduct alleged to have occurred through the use of the internet.

## LEGAL STANDARD

### A. Personal Jurisdiction

The Due Process Clause of the Fifth Amendment governs personal jurisdiction in criminal cases. While criminal courts generally acquire jurisdiction once a defendant is physically before the court, that rule assumes a legitimate territorial nexus between the defendant and the forum. *Frisbie v. Collins*, 342 U.S. 519, 522 (1952); *United States v. Alvarez-Machain*, 504 U.S. 655, 661–62 (1992); *United States v. Noriega*, 117 F.3d 1206, 1212 (11th Cir. 1997). Random, fortuitous, or attenuated contacts are insufficient. The unilateral acts of a third party—such as a co-defendant's residence or conduct—cannot establish jurisdiction. *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (implementing principles found in the Due Process Clause of the Fifth Amendment by ensuring that a criminal defendant themselves, and not through others, has a sufficient connection with the forum seeking personal jurisdiction).

Due process thus bars prosecuting a defendant in a distant jurisdiction with which he has no meaningful contacts. *United States v. Bowens*, 224 F.3d 302, 308 (4th Cir. 2000).

### B. Venue

Venue in criminal cases is governed by both constitutional and statutory provisions. Article III, Section 2, Clause 3 of the Constitution provides that criminal trials "shall be held in the State where the said Crimes shall have been committed."

The Sixth Amendment reinforces this requirement, guaranteeing the accused the right to trial "by an impartial jury of the State and district wherein the crime shall have been committed."

These constitutional provisions reflect the Framers' concern that the government might abuse its power by forcing defendants to stand trial in distant forums, far from their homes, their witnesses, and their support systems. The Supreme Court observed in *United States v. Johnson* that the constitutional venue provisions were contemplated by the Framers due to the "unfairness and hardship to which trial in an environment alien to the accused exposes him." 323 U.S. 273, 275 (1944). The statutory venue provision, 18 U.S.C. § 3237(a), provides that offenses "begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." This statute does not expand venue beyond what the Constitution permits; rather, it implements the constitutional venue requirement by specifying where venue lies for offenses involving conduct in multiple districts.

The Supreme Court has made clear that venue must be determined based on where the essential conduct forming the elements of the charged offense occurred, not merely where the detrimental effects of the offense were felt. *See United States v. Cabrales*, 524 U.S. 1, 7-8 (1998) (holding venue is improper where all acts constituting the offense took place elsewhere). Venue is determined by identifying where the elements of the charged offense occurred, rather than where the detrimental effects of the offense were felt. *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999).

## C. Venue in Conspiracy Cases

Conspiracy is defined by 18 U.S.C. § 371, which makes it unlawful for "two or more persons to conspire either to commit any offense against the United States, or to defraud the United States," provided that "one or more of such persons do any act to effect the object of the conspiracy." The child-exploitation statutes at 18 U.S.C. § 2251(d) and (e) and § 2252A(a)(2) and (b)(1) incorporate these same principles and criminalize both the substantive offenses of advertising and distributing child pornography and conspiracies to commit those offenses.

To establish a conspiracy under these provisions, the government must show that (1) two or more persons agreed to commit the substantive offense; (2) the defendant knowingly and voluntarily joined that agreement; and (3) one or more of the conspirators committed an overt act in furtherance of the conspiracy. *See* 18 U.S.C§§ 2251(d), (e); § 2252A(a)(2), (b)(1); *United States v. Chandler*, 388 F.3d 796, 811 (11th Cir. 2004); *United States v. Toler,* 144 F.3d 1423, 1426-27 (11th Cir. 1998).

Conspiracy venue presents special challenges because by its nature, it may involve multiple participants acting in different locations. Per Eleventh Circuit precedent, venue in a conspiracy is proper only if an overt act in furtherance of the conspiracy was committed in the district. *See United States v. Smith*, 918 F.2d 1551, 1557 (11th Cir. 1990). Moreover, the mere fact that multiple individuals engaged in similar conduct does not establish a conspiracy among them. Mere association or similar conduct does not establish an agreement or conspiracy. *See United States v.*

*Toler*, 144 F.3d 1423, 1426-27 (11th Cir. 1998). There must be evidence of an actual agreement, either express or implied, among the alleged conspirators.

The First Circuit reached a similar conclusion in *United States v. Moran*, 984 F.2d 1299, 1302-03 (1st Cir. 1993), finding parallel actions or knowledge of others' conduct are insufficient to infer a conspiratorial agreement. Instead, the government must prove that the defendant agreed with others to commit the charged offense, not merely that he engaged in similar conduct to others or was aware that others were engaging in similar conduct. *Moran*, 984 F.2d at 1303.

## D. Internet Jurisdiction and Venue

Courts have struggled to determine when a defendant's internet activity creates sufficient contacts with a particular forum to justify jurisdiction and venue there. In *Louis Vuitton Malletier, S.A. v. Mosseri* the court held that mere operation of an interactive website accessible in the forum state does not constitute purposeful availment; there must be additional, forum-directed conduct. 736 F.3d 1339, 1356-58 (11th Cir. 2013).

The Eighth Circuit reached a similar conclusion in *Johnson v. Arden*, holding that posting material on a website accessible nationwide is insufficient to establish purposeful direction toward any single forum. 614 F.3d 785, 796 (8th Cir. 2010). To follow this line of thinking, if website accessibility alone could establish jurisdiction, a defendant who operated a website could be subject to jurisdiction in every state, which would clearly be inconsistent with due process.

The Southern District of Florida adopted the same reasoning in *Roblor Marketing Group, Inc. v. GPS Industries, Inc.*, finding worldwide accessibility of a website without specific targeting forum residents, is insufficient to support personal jurisdiction. 645 F. Supp. 2d 1130, 1140-42 (S.D. Fla. 2009) (explaining that something more than mere accessibility is required—there must be evidence the defendant specifically targeted the forum or directed his activities toward residents of the forum).

Similarly, the Fourth Circuit has applied these principles in criminal cases. In *United States v. Johnson*, the court held that venue cannot rest on the effects of internet conduct not directed toward the forum state. 510 F.3d 521, 524-25 (4th Cir. 2007). Meaning, venue must be based on where the defendant's conduct occurred, not on where others may have accessed the fruits of that conduct.

## ARGUMENT

## I. THIS COURT LACKS PERSONAL JURISDICTION OVER MR. GIKAS

## A. The Court Lacks Personal Jurisdiction Over Mr. Gikas

Mr. Gikas has no connection to Alabama whatsoever. He has lived in California since 1985, has never traveled to Alabama, and has never conducted any business, purchased or kept any property, or established any personal or professional ties there. Every alleged act—including the access of a foreign online forum—occurred entirely within California, through a California internet provider and a California based IP address. Personal jurisdiction must arise from the defendant's own purposeful conduct toward the forum district rather than an unassociated third party's conduct

with the forum. *See Walden* at 284. In this case, the only asserted link between Mr. Gikas and Alabama is the residence of his co-defendant, Jacob Parker. Mr. Gikas did not know Parker, did not communicate with him, and had no knowledge of Parker's location or illicit use of the foreign website at the center of this case. Clearly, the Court therefore lacks personal jurisdiction over Mr. Gikas.

In this case, all of Mr. Gikas's alleged conduct occurred in California. He accessed the foreign website, uploaded and downloaded content, posted on a foreign online forum, and used computer equipment, an internet provider, and an IP address—all while located in California.

## B. Website Accessibility Alone Does Not Establish Jurisdiction

The government may argue that jurisdiction exists because the foreign website in question was accessible in Alabama, however federal courts consistently reject this argument. Just as the Eleventh Circuit in *Louis Vuitton* held that merely operating a website accessible in the forum does not establish jurisdiction without evidence of intentional, forum-directed activity, the government's theory here fails for the same reason. 736 F.3d at 1356–58.

Mr. Gikas did not operate a website directed at Alabama residents; he merely accessed a foreign forum using the Tor network, which is purpose-built to conceal both user and server locations. His alleged activity therefore lacks any intentional connection to Alabama. The routing of his internet traffic through multiple anonymous relays does not transform his conduct into Alabama-directed activity any more than a passive, globally accessible website did in *Louis Vuitton*. 736 F.3d at

1356–58. Thus, under the same reasoning the Eleventh Circuit applies in *Louis Vuitton,* Mr. Gikas's alleged use of Tor cannot establish purposeful contacts with Alabama.

## II. VENUE IS IMPROPER IN THE MIDDLE DISTRICT OF ALABAMA

### A. All Alleged Conduct Occurred in California

Every alleged act in the indictment took place in California. Mr. Gikas allegedly accessed the foreign website, uploaded and downloaded files, and used equipment and internet service located solely in his Irvine residence. His devices, IP address, and provider were all California-based. No evidence suggests that any data originated from or was transmitted to Alabama, that he communicated with anyone located in Alabama, or that any act connected him to the Middle District of Alabama.

Because the conduct forming the elements of the charged offenses occurred entirely within California, venue cannot lie in Alabama. The government's theory relies only on the fact that a co-defendant resides here, which does not transform conduct occurring in another state into an Alabama offense.

### B. No Overt Act in Furtherance of a Conspiracy Occurred in This District

Even under a conspiracy theory, venue is improper because no overt act in furtherance of an agreement occurred in this district. To establish venue based on a conspiracy, the government would need to show that Mr. Gikas entered into an agreement with another person to commit the charged offenses, that he knowingly joined that agreement, and that one or more overt acts in furtherance of it occurred in the Middle District of Alabama. The record contains no such evidence.

The government has produced no discovery indicating that Mr. Gikas communicated with Jacob Parker, coordinated with him, or was even aware of his existence. There are no messages, emails, or shared online activity suggesting an agreement between them. The only overlap is that both allegedly used the same foreign website—conduct that, standing alone, is not evidence of a shared plan or mutual understanding. Parallel use of an online platform does not transform independent actions into a common enterprise. Because there is no evidence of an agreement or of any overt act linking Mr. Gikas to this district, venue cannot rest on a conspiracy theory.

## C. A Co-Defendant' Residence Cannot Create Venue

The only asserted connection between this case and Alabama is Parker's residence in Lee County. That unilateral fact cannot confer venue over another person who has no contacts with this district and whose conduct occurred elsewhere. Permitting venue on that basis would allow the government to prosecute any alleged co-conspirator wherever any other participant happens to live—contrary to the constitutional guarantee that a defendant be tried in the state and district where the crime was committed.

For these reasons, venue is improper in the Middle District of Alabama under conspiracy venue principles. No overt act by Mr. Gikas occurred in Alabama, and there is no evidence that any act by Parker in Alabama was reasonably foreseeable to Mr. Gikas or committed in furtherance of any agreement between them.

## D. Venue Based on a Co-Defendant's Residence Violates the Constitution

As explained above, the sole connection between this case and Alabama is Jacob Parker's residence in Lee County. However, a co-defendant's residence cannot, consistent with the Constitution's venue requirements, establish venue over other defendants who have no independent connection to the district. *See Rodriguez-Moreno* at 279. If venue could be established simply because a co-defendant resided in a particular district, then the constitutional venue requirement would be meaningless in conspiracy cases. The government could charge multiple defendants in a single conspiracy and then prosecute all of them in whichever district it found most convenient, based solely on the residence of one co-defendant.

The constitutional venue requirement exists precisely to prevent this sort of government forum-shopping. The Framers understood that the power to choose the forum of prosecution is a significant prosecutorial advantage, and they imposed constitutional limits on that power to protect defendants. Allowing the government to establish venue based on a co-defendant's residence would eviscerate those protections. The better rule—and the rule consistent with *Cabrales* and the Constitution's venue requirements—is that venue over each defendant must be established independently, based on where that defendant's conduct occurred. *See Cabrales* at 7-8.

Applying this rule, venue over Mr. Gikas is proper only in the Central District of California, where all of his alleged conduct occurred. It is not proper in the Middle District of Alabama, where none of his conduct occurred and with which he has no connection. The constitutional text supports this conclusion. The Sixth Amendment

guarantees the defendant—Mr. Gikas—the right to be tried "in the State and district wherein the crime shall have been committed." Mr. Gikas's alleged crime was committed in California, where he resided and where all of his alleged acts occurred. Therefore, under the plain text of the Sixth Amendment, Mr. Gikas has a constitutional right to be tried in California, not Alabama.

The government may argue that in a conspiracy case, all members of the conspiracy commit the crime wherever any co-conspirator commits an overt act in furtherance of the conspiracy. If accepted, it would mean that any member of any multi-district conspiracy could be prosecuted in any district where any overt act by any conspirator occurred, regardless of whether the particular defendant had any connection to that district. This would effectively eliminate the venue requirement in conspiracy cases. The better approach is to recognize that while a conspiracy may exist across multiple districts, venue over each individual defendant must be based on either: (1) that defendant's own acts in the district, or (2) acts by co-conspirators in the district that were reasonably foreseeable to that defendant and committed in furtherance of an agreement with that defendant. This approach preserves meaningful venue protection for defendants while still allowing prosecution of multi-district conspiracies.

Under this approach, venue over Mr. Gikas is improper in Alabama because he committed no acts there and because there is no evidence that he had any agreement with Parker or that Parker's acts in Alabama were reasonably foreseeable to him.

## III. THE GOVERNMENT'S LIKELY ARGUMENTS FAIL

## A. The "Single Conspiracy" Theory

The government will likely argue that all users of the foreign website were members of a single conspiracy to advertise and distribute child pornography, and that therefore venue is proper wherever any member of the conspiracy committed an overt act. This argument fails. As explained above, the fact that multiple people used the same foreign website does not prove that they all agreed with each other to commit a crime. Under *Toler* and *Moran*, parallel conduct—even parallel criminal conduct—is insufficient to establish a conspiracy. There must be proof of an actual agreement among the alleged conspirators.

Here, there is no evidence that Mr. Gikas had any agreement with Parker or even knew of Parker's existence. The mere fact that they used the same platform does not prove that they agreed with each other to commit crimes any more than the fact that two people use the same email service provider proves that they have agreed to commit crimes together.

Finally, the government's "single conspiracy" theory proves too much. If everyone who used the foreign website was a member of a single conspiracy, and if venue is proper wherever any member committed an overt act, then Mr. Gikas could be prosecuted in any of the federal judicial districts (even without a co-defendant in that particular district), since the website presumably had users in all or most of them or was accessible in that district. This would give the government unlimited discretion to forum-shop, choosing whichever district it believed would be most

favorable to the prosecution. This is precisely what the constitutional venue requirement is designed to prevent.

## B. The "Interstate Commerce" Argument

The government may argue that because the foreign website was accessible across state lines and because internet communications inherently involve interstate commerce, venue is proper wherever the foreign website could be accessed. This argument confuses the government's power to regulate interstate commerce under the Commerce Clause with the constitutional requirement of proper venue.

The Commerce Clause gives Congress the power to regulate activities that substantially affect interstate commerce, and this power extends to internet-based conduct. However, the existence of Commerce Clause jurisdiction does not eliminate the constitutional venue requirement. A defendant may have engaged in conduct that Congress has power to regulate under the Commerce Clause, but he still has a Sixth Amendment right to be tried in the district where his conduct occurred. In *Johnson*, the Supreme Court made clear that jurisdiction and venue must rest on where the acts constituting the offense occurred. *Johnson* at 275. The fact that an offense involves interstate commerce does not mean that venue is proper in every state or district that might be affected by the interstate nature of the offense.

Here, Mr. Gikas's acts occurred in California. The fact that his conduct may have involved interstate communications or may have affected interstate commerce does not change the venue analysis. Venue is proper where he acted, which is California, not Alabama.

## C. The "Accessibility Equals Contact" Argument

The government may argue that by posting content to a website accessible in Alabama, Mr. Gikas purposefully directed his conduct toward Alabama and therefore both personal jurisdiction and venue are proper there. This argument has been rejected by every circuit to consider it.

As discussed above at length, courts recognized that if website accessibility alone could establish jurisdiction and venue, then anyone who posts anything on the internet would be subject to jurisdiction and prosecution everywhere. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1356-58 (11th Cir. 2013) (holding that the mere operation of an interactive website accessible in the forum does not constitute purposeful availment); *Johnson v. Arden* 614 F.3d 785, 796 (8th Cir. 2010) (holding that posting material on a website accessible nationwide is insufficient to establish purposeful direction toward any single forum); *United States v. Johnson*, 510 F.3d 521, 524-25 (4th Cir. 2007) (holding that venue cannot rest on the effects of internet conduct not directed toward the forum). The government's position would render the personal jurisdiction and venue requirements meaningless in internet cases.

## CONCLUSION

For all of the foregoing reasons, this Court lacks personal jurisdiction over Mr. Gikas and venue is improper in the Middle District of Alabama. Mr. Gikas is a California resident whose alleged conduct occurred entirely in California. He has never been to Alabama, has never directed any conduct toward Alabama, and has no

connection whatsoever to this forum. The sole link between this case and Alabama is the unilateral residence of a co-defendant with whom Mr. Gikas apparently never communicated.

Under the Supreme Court's decisions in *Walden*, *Cabrales*, and *Rodriguez-Moreno*, and under Eleventh Circuit precedent in *Louis Vuitton* and *Smith*, exercising jurisdiction over Mr. Gikas in Alabama and trying him here would violate both the Due Process Clause and the Sixth Amendment's venue requirement.

Mr. Gikas respectfully requests that this Court dismiss the Superseding Indictment for lack of personal jurisdiction and improper venue. Alternatively, if the Court finds that dismissal is not warranted, Mr. Gikas requests that this Court transfer this case to the Central District of California pursuant to Federal Rule of Criminal Procedure 21(b), where venue is proper and where trial would be convenient for all parties and witnesses.

RESPECTFULLY SUBMITTED,

*l/s Michael P. Hanle*
MICHAEL P. HANLE

*l/s Brett H. Knight*
BRETT H. KNIGHT

OF COUNSEL:
Jaffe, Hanle, Whisonant & Knight, P.C.
2320 Arlington Ave. S.
Birmingham, AL 35205
Ph.:205-930-9800
Fax:205-476-3251
mhanle@rjaffelaw.com
bknight@rjaffelaw.com

## **CERTIFICATE OF SERVICE**

I do hereby certify that I have on this the 10th day of October 2025 served a copy of the foregoing by electronically filing to all parties involved.

*l/s Michael P. Hanle*
MICHAEL P. HANLE

*l/s Brett H. Knight*
BRETT H. KNIGHT